UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| ROCHELLE ROWANE BORDEAUX, <br><br> Plaintiff, <br><br> vs. <br><br> JACAB CARSON, Public Defender, Minnehaha Co. Public Defender; and DOES, Public Defender, Minnehaha Co. Public Defender, <br><br> Defendants. | SOUTHERN DIVISION <br><br> 4:25-CV-04047-RAL <br><br><br> OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |
| ROCHELLE ROWANE BORDEAUX, <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF SOUTH DAKOTA; and DOES, Officers, Judges, Minnehaha County; Pennington Co. Jail, <br><br> Defendants. | SOUTHERN DIVISION <br><br> 4:25-CV-04059-RAL |
| ROCHELLE ROWANE BORDEAUX, <br><br> Plaintiff, <br><br> vs. <br><br> SOUTH DAKOTA STATE WOMEN'S PRISON, Women's Prison, <br><br> Defendant. | SOUTHERN DIVISION <br><br> 4:25-CV-04081-RAL |

| | |
|---|---|
| LACHARA MAIRE BORDEAUX,<br><br>      Plaintiff,<br><br> vs.<br><br>SOUTH DAKOTA STATE WOMEN'S PRISON,<br><br>      Defendant. | CENTRAL DIVISION<br><br>3:25-CV-03010-RAL |

Currently pending before this Court are Plaintiff Rochelle Rowane Bordeaux's three pro se complaints. Bordeaux v. Carson et al., 4:25-CV-04047-RAL, Doc. 2; Bordeaux v. South Dakota, State of et al., 4:25-CV-04059-RAL, Doc. 2; and Bordeaux v. South Dakota State Women's Prison, 4:25-CV-04081-RAL, Doc. 2.[1] Also pending is Plaintiff LaChara Marie Bordeaux's pro se complaint, consolidated for screening with Plaintiff Rochelle Bordeaux's complaint[2] because it arises out of the same series of events. Bordeaux v. South Dakota State

---

[1] In CV-4047 and CV-4059, Rochelle Bordeaux lists additional plaintiffs. See CV-4047, Doc. 2 at 1 (listing LaChara Marie Bordeaux and Kathleen Viereck as plaintiffs); CV-4059, Doc. 2 at 1 (listing LaChara Marie Bordeaux and Ryley Warren Bordeaux as plaintiffs). But in both cases, Rochelle Bordeaux is the only plaintiff to sign the complaint. See CV-4047, Doc. 2 at 6; CV-4059, Doc. 2 at 6. "Under Rule 11(a) of the Federal Rules of Civil Procedure, each pro se party in the case must sign the complaint in order to properly bring this action before the Court." Monroe v. Yankton Sioux Hous. Auth., No. 4:25-CV-04113-ECS, 2025 WL 1795824, at *2 (D.S.D. June 30, 2025) (quoting Clay v. Purkett, No. 06-CV-1859, 2007 WL 107758, at *1 (E.D. Mo. Jan. 9, 2007)); see also Ortiz-Diaz v. Social Sec., No. 17-CV-7532, 2018 WL 791256, at *2 (E.D.N.Y. Feb. 7, 2018) (citing Rule 11(a) for the proposition that "[a]ll pro se plaintiffs in a lawsuit must sign the complaint"). Therefore, Rochelle Bordeaux is the only plaintiff in both CV-4047 and CV-4059.

[2] Rochelle and LaChara filed a copy of the same complaint in each case. Compare CV-4081, Doc. 2, with CV-3010, Doc. 1. Although LaChara Bordeaux's signature does not appear on the complaint, see CV-3010, Doc. 1 at 6, LaChara filed a motion for leave to proceed in forma pauperis and submitted information for her own prisoner trust account report, see id. at Doc. 2. Therefore, this Court treats LaChara as the plaintiff in CV-3010.

2

Women's Prison, 3:25-CV-03010-RAL, Doc. 1. This Court will refer to each of these cases by the last four digits of their civil case filing number, followed by the corresponding docket number.

## I.    Motions for Leave to Proceed In Forma Pauperis

### a.    Rochelle Bordeaux ("Rochelle")

At the time Rochelle filed her complaints, she was incarcerated at the Minnehaha County Jail. CV-4047, Doc. 2 at 3; CV-4059, Doc. 2 at 3; CV-4081, Doc. 2 at 3. Before the Court ruled on Rochelle's motion for leave to proceed in forma pauperis, she was released from custody.[3]

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). But circuit courts are split on whether the PLRA continues to apply after the prisoner is released during litigation. See Carson v. Tulsa Police Dep't, 266 F. App'x 763, 766–67 (10th Cir. 2008) (describing split in authority); see also Domino v. Garland, No. 20-CV-2583, 2021 WL 1221188, at *1 (D. Minn. Apr. 1, 2021).

The United States Courts of Appeals for the Second, Fourth, and Sixth Circuits have held that, under the PLRA, "a prisoner is obligated to pay assessed fees and costs only while he or she remains incarcerated[,]" and "[a]fter release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status."

---

[3] Rochelle is no longer listed as an inmate on the inmate listing portal for the Minnehaha County Jail. See Who's Behind Bars, Minnehaha County Sheriff's Office, https://web.minnehahacounty.gov/dept/so/jailInmateInfo/jailInmateInfoSearchResults.php?action=search&txtLastName=bordeaux&btnSearch=Search (last visited Mar. 26, 2026). A search of Rochelle on the South Dakota Department of Corrections Offender Locator shows that Rochelle was discharged on December 29, 2022, and is no longer in custody. See Offender Locator, South Dakota Department of Corrections, https://docadultlookup.sd.gov/adult/lookup/details/?id=M5jskpHt/1o= (last visited Mar. 26, 2026). Additionally, Rochelle does not appear to be in federal custody. See Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 26, 2026) (searching Bordeaux's information yields no results).

3

In re Prison Litig. Reform Act, 105 F.3d 1131, 1139 (6th Cir. 1997); see also McGann v. Comm'r, Soc. Sec. Admin., 96 F.3d 28, 29–30 (2d Cir. 1996); DeBlasio v. Gilmore, 315 F.3d 396, 397 (4th Cir. 2003). By contrast, the Fifth, Seventh, and D.C. Circuits hold, based on the plain language of § 1915(b)(1), that a complainant must pay the full amount of the filing fee if the complainant was a prisoner when the action was commenced. See Gay v. Tex. Dep't of Corr. State Jail Div., 117 F.3d 240, 241–42 (5th Cir. 1997); Robbins v. Switzer, 104 F.3d 895, 897–99 (7th Cir. 1997); In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997).

The United States Court of Appeals for the Eighth Circuit has not expressly weighed in on this issue but the court's holding in Tyler is instructive. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997). There, the Eighth Circuit denied the plaintiff's motion to proceed in forma pauperis and refused to address the merits of the plaintiff's mandamus petition until the requisite financial obligations were met. Id. at 529–30. The Eighth Circuit explained that because the plaintiff had previously filed three actions dismissed as frivolous or for failure to state a claim, he was no longer eligible for a § 1915(b) installment plan. Id. at 529; see also 28 U.S.C. § 1915(g) (stating that a prisoner is not eligible for a reduced filing fee or an installment payment plan "if the prisoner has, on 3 or more prior occasions . . . brought an action . . . that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim"). As such, the Eighth Circuit ordered the plaintiff to pay the filing fee in full, noting that "[e]ven if [plaintiff]'s petition is dismissed, [plaintiff] will still be assessed the full filing fee because the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal." Tyler, 110 F.3d at 529–30.

Based on this language, courts within the Eighth Circuit have held that if a prisoner filed the action while in custody, they remain liable for the filing fee even if they are later released from

4

custody.  See Domino, 2021 WL 1221188, at *1 n.3 (stating that the "holding in Tyler that the fee obligation imposed by § 1915(b)(1) is triggered at the time the action is filed . . . is consistent with the conclusion that a complainant who filed an action when he was a prisoner remains liable for the filing fee if he is subsequently released from custody"); Counts v. Missouri, No. 4:24-CV-01437-MTS, 2025 WL 812276, at *3 (E.D. Mo. Mar. 13, 2025) (stating that, in light of the Eighth Circuit's decision in Tyler, the § 1983 plaintiff was "responsible for the entire [filing] fee because the full fee was assessed against him prior to his release from custody"); McFee v. Minnesota, No. 11–3614, 2012 WL 514708, at *3 nn.5–6 (D. Minn. Jan. 24, 2012), report and recommendation adopted, 2012 WL 512611 (D. Minn. Feb. 15, 2012) (recognizing that the plaintiff must pay the filing fee, despite having been released from custody before the court ruled on the motion for IFP); Williams v. Doe #1, No. 4:06CV1344, 2006 WL 3804027, at *1 n.1 (E.D. Mo. Nov. 7, 2006) (noting "§ 1915(b)(1) continue[d] to apply" despite litigant's release).  But see Clark v. Wood, No. 4:20-CV-1215-JAR, 2021 WL 1873561, at *1 (E.D. Mo. May 10, 2021) (stating that if a plaintiff was released from custody before the court ruled on the IFP motion, the court will consider the motion under the non-prisoner standard in 28 U.S.C. § 1915(a)(1)).

The Eighth Circuit's holding in Tyler points to requiring Rochelle to pay the full filing fee. After all, Rochelle was an inmate when she filed this action, though she has been released from custody subsequently.  See 28 U.S.C. § 1915(b)(1).  This application of the PLRA is consistent with other cases in the District of South Dakota.  See Hilston v. Lincoln Cnty. Cir. Judges, 782 F. Supp. 3d 712, 715–717 (D.S.D. 2025); Bell v. Bittinger, No. 4:24-CV-04152-LLP, 2025 WL 1424903, at *1–2 (D.S.D. May 16, 2025).

Under the PLRA, however, the Court may accept partial payment of the initial filing fee where appropriate.  Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the

inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

A review of Rochelle's motions for leave to proceed in forma pauperis, reveal that she has insufficient funds to pay the initial filing fee. See CV-4047, Doc. 8; CV-4059, Doc. 1 at 5; CV-3010, Doc. 2 at 4. Because Rochelle would owe more than her current balance as his initial partial filing fee, this Court grants Rochelle's motions for leave to proceed in forma pauperis, CV-4047, Doc. 1; CV-4059, Doc. 1; CV-3010, Doc. 2, and waives her initial partial filing fee. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay her filing fee, Rochelle must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the institution that previously housed Rochelle. Rochelle remains responsible

for the entire $350 filing fee. See Tyler, 110 F.3d at 529–30.[4] Because the PLRA requires a prisoner to pay the full amount of a filing fee for each civil action they file, 28 U.S.C. § 1915(b)(1), Rochelle is responsible for the $350 filing fee in each of the three cases she has filed with this Court: Bordeaux v. Carson et al., 4:25-CV-04047-RAL, Doc. 2; Bordeaux v. South Dakota, State of et al., 4:25-CV-04059-RAL, Doc. 2; and Bordeaux v. South Dakota State Women's Prison, 4:25-CV-04081-RAL, Doc. 2.

### b. LaChara Bordeaux ("LaChara")

LaChara is currently incarcerated at the South Dakota Women's Prison[5] and was located there at the time she filed her complaint and motion for leave to proceed in forma pauperis. CV-3010, Doc. 1 at 1; Doc. 2 at 1. Under the Prison Litigation Reform Act ("PLRA"), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). This Court has previously held that the PLRA allows joint prisoner litigation but requires each prisoner to pay the full $350 filing fee. Dale v. Kaemingk, No. 4:15-CV-04103-RAL, 2015 WL 6823536, at *1–2 (D.S.D. Nov. 5, 2015). Thus, Rochelle and LaChara Bordeaux must both pay the full $350 filing fee in accordance with the

---

[4] "As a practical matter, because [Rochelle] is no longer a prisoner as defined in 28 U.S.C. § 1915(h), the fee payment provisions of § 1915(b)(2) cannot be implemented at this time. Should [Rochelle] be a prisoner in the future, § 1915(b)(2) might then become applicable." Domino, 2021 WL 1221188, at *2 n.4; see also McFee, 2012 WL 514708, at *3 n.6 (stating that because the plaintiff was released, the fee payment provisions under § 1915(b)(2) cannot be utilized, but noting that if the plaintiff ever returns to custody by violating his terms of release or committing a new crime, § 1915(b)(2) will then become applicable).

[5] The South Dakota Department of Corrections Offender Locator shows that LaChara is an active inmate at the Pierre Minimum Center, which is located at the same address LaChara provides on her complaint for the South Dakota Women's Prison. See Offender Locator, South Dakota Department of Corrections, https://docadultlookup.sd.gov/adult/lookup/details/?id=/JaGZKqjEuQ= (last visited Apr. 8, 2026).

PLRA. The Court may, however, accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson, 129 F.3d at 483 (quoting McGore, 114 F.3d at 604).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1). LaChara reports an average monthly balance for the past six months in her prisoner trust account of $22.35 and an average monthly deposit of $75.82. CV-3010, Doc. 2. Based on this information, the Court grants LaChara's motion for leave to proceed in forma pauperis, CV-3010, Doc. 2, and waives her initial partial filing fee because the initial partial filing fee would be greater than his current balance. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay her filing fee, LaChara must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at LaChara's institution. LaChara remains responsible for the entire filing fee as long as she is a prisoner. See Tyler, 110 F.3d at 529–30.

## II.   1915A Screening

### A.   Factual Background

#### 1.   4:25-CV-04047-RAL

Rochelle brings claims against Jacab Carson, a Public Defender at the Minnehaha County Public Defender's Office, as well as two other unnamed public defenders at the same office, in their individual and official capacities. CV-04047, Doc. 2 at 1–2, 4. Rochelle alleges that the defendants were "[l]ate on cases" and includes an example of when "the attorney" included incorrect information on a "pink slip" regarding Rochelle's employment status.[6] Id. at 4. Rochelle alleges that she was "un-informed[,]" and was not made aware of court dates, which "put[] fright in [her] life[]." Id. at 4–5. Rochelle alleges that the defendants' conduct was "very unperfesonal [sic]" and states that her "claim is 'negligence' and 'unprofesonal [sic] conduct.'" Id. at 5. Rochelle also includes the statement "ineffective counsel[.]" Id. at 4 (emphasis in original omitted).

As relief, Rochelle requests that the Court "'suspend him' or maybe take their job more serious. 'Very unperfesonal [sic].'" Id. at 6. It is not clear which defendant Rochelle seeks suspension of. See id.

---

[6] Bordeaux does not clarify which defendant she is referring to here or what effect, if any, this mistake had on her legal proceedings. See id. at 4–5.

### 2.    4:25-CV-04059-RAL

Rochelle lists as a defendant the "State of South Dakota[,]" and lists the position of this defendant as "Att: Officers: Judges[,]" the place of employment as Minnehaha County, and provides the address for the Minnehaha County Jail. CV-04059, Doc. 2 at 1. As a second defendant, Rochelle names the State of South Dakota again, but this time lists the position as "Officers" and lists the place of employment as the Pennington County Jail. Id. at 1–2. Rochelle states that she is suing the defendants in both their official and individual capacities. Id. at 2. Liberally construing her complaint, this Court understands Rochelle to be asserting claims against the State of South Dakota, state officials, officers at the Minnehaha County Jail, and officers at the Pennington County Jail.

Rochelle alleges that her complaint arises out of the State of South Dakota causing "hard ships" to herself and her relatives "since [they] were children." Id. at 4. Rochelle alleges that "[a]t tymes [she was] arrested because of Def of Character, arrested for False accusations, harassed and followed from one town to the next." Id. (spelling and grammar errors in original). Rochelle alleges that her civil rights "have been violated 'excessive.'" Id. As an example of a civil rights violation, Rochelle alleges that in the beginning of 2024, after she was released from serving a one-year sentence in Pierre, South Dakota, she was "pulled over 7 tymes less then 3 month in Penn. Co. South Dakota." Id. at 4–5 (spelling and grammar errors in original). Rochelle alleges that she "had not once got arrested for poss. Charges out of Penn. Co. Jail. Nor, had [she] ever went to jail in Penn. Co. Jail." Id. at 5.

Lastly, Rochelle provides the statement "very cruel and unusual punshments [sic]." Id. at 5. Rochelle does not provide detail on what conduct or action taken by the defendants constituted cruel and unusual punishment, but alleges that if one were to "see [her] sentencings when 'trialed'

10

in Minniehaha Co. [her] civil rights [were] 'violated'; ('excessive punishments') Excessively." Id. (spelling and grammar errors in original).

As relief, Rochelle requests that she be able to "live Freely with a just and fair life w/out target on [her] back, 'metaphorically' speaking." Id. at 6.

### 3.    4:25-CV-04081-RAL and 3:25-CV-03010-RAL

The plaintiffs, Rochelle Bordeaux and LaChara Bordeaux, allege that the South Dakota State Women's Prison is "with-holding [Rochelle's] mail . . . from [her] sister LaChara Marie Bordeaux," who is located at the South Dakota Women's Prison. CV-04081, Doc. 2 at 4; CV-03010, Doc. 1 at 4. Rochelle alleges that mail has been withheld from "[n]ot just [her] sister but several relatives of [hers]." Id. Rochelle and LaChara allege that the withholding of mail has been "a huge burden of a violation of [their] Amendments freedom of speech." Id. The plaintiffs also appear to take issue with the background check process involved in sending and receiving mail. Id. (including the statement, "'Why' a background check, of approval?").

Rochelle and LaChara make the following request for relief: "Court to left the background check in order to write, not just my siblings (inmates in general.) they don't need approval to get a letter threw [sic] the mail." CV-04081, id. at 5; CV-03010, id. at 5.

### B.    Legal Standard

The court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of

11

Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court now screens both Rochelle and LaChara's claims under 28 U.S.C. § 1915A.[7]

---

[7] Because Rochelle filed this action while incarcerated, the Court conducts this screening pursuant to § 1915A. See Domino, 2021 WL 1221188, at *1. But even if Rochelle's petition was not subject to a § 1915A screening, the Court's analysis would be the same under 28 U.S.C. § 1915(e). See id. at *1 n.2.

## C.    Legal Analysis

### 1.    4:25-CV-04047-RAL

Liberally construing her complaint, Rochelle appears to be asserting both an ineffective assistance of counsel claim and a state-law legal malpractice claim. See CV-4047, Doc. 2 at 4–6. This Court need not undertake analysis of her claims, however, because her only request for relief is that this Court "'suspend him' or maybe take their job more serious. 'Very unperfesonal.'" Id. at 6. Suspending state court public defenders or ordering that attorney to take their job more seriously is not the type of relief that this Court can grant.[8]

Even if Rochelle had requested relief that this Court were able to grant, her claims against the defendants, in both their official and individual capacities, would fail. Beginning with Rochelle's claims against the public defenders in their official capacities, "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Here, all the defendants named by Rochelle are public defenders employed at the Minnehaha County Public Defender's Office. CV-4047, Doc. 2 at 1–2. Therefore, her official capacity claims against them are treated as claims against Minnehaha County itself.

A municipal or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell v. Dep't of Soc.

---

[8] Moreover, Rochelle does not clarify which defendant she would like to be suspended, or specify the actions of individual defendants that led to the alleged deprivation of Rochelle's rights, which does not provide the defendants with fair notice as required by the Federal Rules of Civil Procedure. A "[p]laintiff must provide the role of each named defendant in a case, in order that each specific defendant can receive notice of what he or she is accused of doing." Mencin v. City of Troy Police, No. 4:24-CV-852, 2024 WL 4370846, at *3 (E.D. Mo., Oct. 2, 2024) (citing Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014)).

13

Servs., 436, U.S. 658, 694 (1978). Here, however, Rochelle has not alleged facts that would support a claim that Minnehaha County has executed an unconstitutional policy or custom. Thus, her claims against Carson and the two other unnamed public defenders employed at the Minnehaha County Public Defender's Office in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Rochelle also sues the defendants in their individual capacities. CV-4047, Doc. 2 at 2. But Rochelle only seeks injunctive relief. Id. at 6. "Section 1983 plaintiffs may sue individual–capacity defendants only for money damages and official–capacity defendants only for injunctive relief." Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd., 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity."). Therefore, Rochelle's request for injunctive relief against the defendants in their individual capacities is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

### 2. 4:25-CV-04059-RAL

#### a. Claims Regarding Previous Convictions

Bordeaux alleges that she was subject to "very cruel and unusal [sic] punshments [sic]," and that "[w]hen you see [her] sentencings when 'trialed' in Minniehaha [sic] Co., [her] civil rights are 'violated'; ('excessive punishments')[.]" See CV-4059, Doc. 2 at 5. Liberally construing her

14

complaint, Bordeaux appears to be challenging the length of the sentences she previously received[9] based on the Eighth Amendment's prohibition on excessive punishments. See Graham v. Florida, 560 U.S. 48, 59 (2010) ("The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense." (citation modified)).

But a plaintiff may not use a §1983 suit "to challenge the validity of a prior conviction or sentence so as to obtain release from custody or monetary damages." Olivier v. City of Brandon, 146 S. Ct. 916, 920 (2026) (citing Heck v. Humphrey, 512 U.S. 477 (1994)). "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005). Based on Rochelle's statement that by looking at her sentencings from Minnehaha County, a person would see that her civil rights were violated, Bordeaux appears to be challenging the validity of those sentences. CV-4059, Doc. 2 at 6. To the extent that Rochelle is attempting to challenge the validity of her prior sentences, her §1983 suit is barred under Heck v. Humphrey. Heck, 512 U.S. at 486 (recognizing the principle "that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments").

---

[9] When Rochelle filed this complaint, she was incarcerated at the Minnehaha County Jail, and stated that at the time of the alleged incidents, she was "in jail and still awaiting trial on pending criminal charges[.]" CV-4059, Doc. 2 at 3. Because she had not been sentenced at the time she filed this complaint, this Court declines to construe Rochelle's claims as being brought under 28 U.S.C. § 2254. Rochelle also does not appear to be challenging her confinement at the Minnehaha County Jail at the time she filed this complaint under 28 U.S.C. § 2241. Rochelle does not make any allegations regarding her then-confinement at the Minnehaha County Jail, and on the same page that Rochelle alleges that her civil rights have been violated based on her sentencings, she lists dates spanning from 2015–2019. Id. at 5.

Claims brought under §1983 are cognizable, and are not barred by Heck, when plaintiffs seek a prospective injunction that does not "necessarily imply the invalidity of their convictions or sentences." Wilkinson, 544 U.S. at 81 (citing Edwards v. Balisok, 520 U.S. 641, 648 (1977)); see also Olivier, 146 S. Ct. at 924 (stating that the "Heck bar does not come into play[]" when a plaintiff seeks wholly prospective injunctive relief). Here, the only relief Rochelle seeks is purely prospective injunctive relief – she requests only that she be able "[t]o live Freely with a just and fair life w/out target on [her] back 'metaphorically' speaking[,]" which this Court understands to be a request that her rights not be violated again in the future. CV-4059, Doc. 2 at 6.

While a claim seeking injunctive relief that does not implicate the validity of Rochelle's prior sentences is cognizable under § 1983, the relief Rochelle seeks is not the kind this Court can grant. In Olivier, the plaintiff sought an order declaring a specific ordinance unconstitutional and preventing its enforcement in the future. Olivier, 146 S. Ct. at 920. In Wilkinson, the plaintiffs requested that they receive parole hearings conducted under proper proceedings. Wilkinson, 544 U.S. at 77. Here, Rochelle seeks relief that her civil rights, generally, not be violated in the future. This broad request that Rochelle's rights not be violated in the future is not something that this Court has control over, and not the sort of relief that this Court can grant. Therefore, her claims regarding her previous sentences are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

### b.      Fourteenth Amendment Claim

Based on her allegations that she has been harassed by state officials by being repeatedly arrested and being "followed from one town to the next[,]" CV-4059, Doc. 2 at 4, this Court liberally construes Rochelle's complaint to be alleging a selective-enforcement claim under the Fourteenth Amendment's Equal Protection Clause.  The Equal Protection Clause prohibits

16

selective enforcement of the law based on suspect classifications such as race or nationality. Johnson v. Crooks, 326 F.3d 995, 999–1000 (8th Cir. 2003); see also Parada v. Anoka Cnty., 481 F. Supp. 3d 888, 899 (D. Minn 2020). "A selective-enforcement claim requires proof that the officer exercised their discretion to enforce the laws on account of the plaintiff's race, nationality, or other suspect classification and that enforcement of the law had a discriminatory effect and purpose." Parada, 481 F. Supp. 3d at 899. Here, Rochelle provides no facts that the "harassment" and civil rights violations she describes were based on race or any other suspect classification. See generally CV-4059, Doc. 2. Because she does not allege membership in a protected class, the Court understands Rochelle to be alleging a "class of one" equal protection claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

In a "class of one" equal protection claim, the plaintiff must show "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.; see also Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011)). Other than conclusory statements that Rochelle has faced "hardships" and has been "harassed[,]" CV-4059, Doc. 2 at 4, Rochelle makes no allegations that she has been treated differently from others who are similarly situated, and "this failure alone justifies dismissing [her] equal-protection claims." Wilson v. City of Clayton, No. 4:24-CV-1457-ZMB, 2026 WL 657485, at *7 (E.D. Mo. Mar. 9, 2026). Further, selective-enforcement claims "may not be attacked in a class-of-one equal protection claim." Flowers v. City of Minneapolis, 558 F.3d 794, 799–800 (8th Cir. 2009) (reasoning that "a police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion[,] and the "class-of-one theory [is] a 'poor fit' in a context that involved discretionary decisionmaking" (citation omitted)). Therefore, Rochelle's

17

Fourteenth Amendment claims against all defendants are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.     4:25-CV-04081-RAL and 3:25-CV-03010-RAL

Liberally construing their complaint, Rochelle and LaChara assert a First Amendment right to send and receive mail claim. See generally CV-4081, Doc. 2; CV-3010, Doc. 1. Inmates have a First Amendment right to receive mail. Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998). But that "right may be limited by prison regulations that are reasonably related to legitimate penological interests." Id. In Turner v. Safley, the Supreme Court of the United States held that prison rules and restrictions on First Amendment rights are constitutional only "if [they are] reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The Court in Turner provided four factors to determine whether a prison rule withstands scrutiny:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

Thongvanh v. Thalacker, 17 F.3d 256, 259 (8th Cir. 1994).

This Court need not evaluate these factors here, however, because the only defendant Rochelle and LaChara seek relief from is the South Dakota State Women's Prison. CV-4081, Doc. 2 at 1; CV-3010, Doc. 1 at 1. The Eleventh Amendment bars suits against a state entity regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the Court examines powers created by state law, the degree of autonomy and control, and whether it is funded by the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citation omitted).

18

According to South Dakota statute, state correctional facilities, such as the South Dakota Women's Prison are "under the direction and government of the Department of Corrections[,]" which was created by the state legislature. See SDCL §§ 1-15-1.2, 24-1-4. The South Dakota Women's Prison is therefore an arm of the state of South Dakota and, as such, is not subject to suit under § 1983. See Thornton v. Dept of Corr., No. 4:23-cv-04215-CCT, 2024 WL 4787875, at *2 (D.S.D. Nov. 14, 2024) (dismissing claims against the South Dakota Department of Corrections with prejudice because it is an arm of the state). Thus, Rochelle and LaChara's claims against the South Dakota Women's Prison are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III.    Conclusion

Accordingly, it is

ORDERED that Rochelle's motions for leave to proceed in forma pauperis, CV-4047, Doc. 8; CV-4059, Doc. 1 at 5; CV-3010, Doc. 2 at 4, are granted. It is further

ORDERED that the Clerk of Court shall send a copy of this order to the appropriate financial official at the Minnehaha County Jail, the institution that previously housed Rochelle. It is further

ORDERED that LaChara's motion for leave to proceed in forma pauperis, CV-3010, Doc. 2, is granted. It is further

ORDERED that the Clerk of Court shall send a copy of this order to the appropriate financial official at LaChara's institution, the Pierre Minimum Center (South Dakota Women's Prison). It is further

ORDERED that the institution having custody of LaChara is directed that whenever the amount in LaChara's trust account, exclusive of funds available to her in her frozen account,

exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to LaChara's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.  It is further

ORDERED that Rochelle's claims in 25-CV-4047-RAL are dismissed in part with prejudice and in part without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).  It is further

ORDERED that Rochelle's claims in 25-CV-4059-RAL are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).  It is further

ORDERED that Rochelle and LaChara's claims in 4:25-CV-04081-RAL and 3:25-CV-03010-RAL are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

DATED April 13ᵗʰ, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

20